UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JOSHUA PERVA,
    also known as "James Alvarado"

No. 17 CR 565

Judge Edmond E. Chang

## GOVERNMENT'S SENTENCING MEMORANDUM

The UNITED STATES OF AMERICA, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, hereby submits the following sentencing memorandum. The government agrees with the PSR that the correct advisory Sentencing Guidelines range in this case is 37 to 46 months' imprisonment. The government objects to paragraph 71 of the PSR, as discussed below.

For the reasons discussed herein, the government concurs with the recommendation of the Probation Office of a term of incarceration of 46 months, followed by a term of supervised release of three years.

## I. BACKGROUND[1]

Defendant Joshua Perva was charged by indictment on August 24, 2017 with making false statements during the attempted acquisition of a firearm, in violation of Title 18, United States Code, Section 922(a)(6) (Count One), and possession of

---

[1] The facts underlying this case and discussed herein are set forth in several sources, including the Presentence Investigation Report ("PSR"), the Government's Version of the Offense ("G.V.," attached to the PSR), and the district court record ("Dkt."). A color copy of the exhibits to the Government's Version will be submitted to chambers for the Court's review.

explosives by a felon, in violation of Title 18, United States Code, Section 842(i)(1) (Count Two). Dkt. 1. On April 8, 2019, defendant pleaded guilty to Count Two pursuant to a written plea agreement, further agreeing to Count One as a stipulated offense. Dkt. 54. The sentencing hearing is currently scheduled for July 17, 2019 at 2:30 p.m.

## II. DEFENDANT'S FALSE STATEMENTS IN CONNECTION WITH THE ATTEMPTED ACQUISITION OF A FIREARM (STIPULATED OFFENSE)

In late 2016, defendant, a convicted felon on parole using the alias name "James Alvarado," attempted to purchase a firearm receiver from a licensed firearms dealer in Kansas. The Kansas dealer had placed an advertisement for the receiver on a website specializing in firearms sales, and defendant began corresponding with the Kansas dealer, mailing the Kansas dealer a money order for the cost of the receiver and shipping costs.

The receiver that defendant was attempting to purchased was a "firearm" for purpose of federal firearms regulations, meaning that it could only be shipped out of state to another licensed federal firearms dealer. If defendant had attempted to pick this receiver up from a licensed firearms dealer in Illinois, he would have been subject to a background check where his status as a felon would have been discovered and would have prevented the sale.

Instead, defendant pretended that he was a licensed federal firearms dealer, authorized to receive the firearm. He sent the Kansas dealer multiple copies of what purported to be a federal firearms license for a firearms dealer named "Liberty Grafix," listing defendant's residential address as the "dealer's" address. G.V. Ex. H.

The license was a forgery, and the Kansas dealer doubted the authenticity of the license and refused to send the firearm. In response, defendant emailed or caused to be emailed to the Kansas dealer an email purportedly from "Liberty Grafix," complaining that the Kansas dealer would not complete the sale, writing in part that the Kansas dealer was "Wast[ing]" Liberty Grafix's time and was "Insulting [Liberty Grafix's] Customers." G.V. Ex. I.

When the Kansas dealer still refused to send the firearm, defendant then sent or caused to be sent an email purportedly from a second Illinois licensed dealer, "Fortune Unlimited Firearms," attaching what appeared to be a federal firearms license for Fortune Unlimited Firearms. G.V. Ex. J. This license was also a forgery. The Kansas dealer again refused to send the firearm,[2] and offered to refund the money to "James Alvarado" if "Alvarado" would send the Kansas dealer a picture of "Alvarado's" driver's license so that the Kansas dealer could ensure he was refunding the money to the correct person. In return, defendant sent or caused to be sent to the Kansas dealer a copy of a fictitious Illinois driver's license and a copy of a fictitious Illinois State Police identification card, both bearing the name "James Alvarado" with a picture of an Illinois State Police officer in uniform. G.V. Exs. K, L.

As discussed in more detail below, on January 17, 2017, law enforcement did a parole check at defendant's residence, after which he was arrested for a parole violation. During a post-arrest interview with law enforcement, defendant admitted

---

[2] After the Kansas dealer received the first forged federal firearms license, he contacted the ATF to report the fraudulent conduct.

that he was attempting to obtain the receiver so that he could build a functioning firearm by combining the receiver with other firearms parts in his residence, including air soft rifle parts. G.V. Ex. F. During the January 2017 search of his residence, officers found a number of parts to replica and air soft firearms. G.V. Ex. F. Defendant knew he was not allowed to possess a firearm; he signed a notice telling him he could not possess a firearm when he was paroled from IDOC custody in 2017. G.V. Ex. M.

After the January 2017 search, defendant was briefly incarcerated on a parole violation before he was released and returned to residing in his residence. After he was released but prior to his federal arrest, defendant, using an alias name, purchased a firearm part from eBay. PSR ¶ 53.

### III. POSSESSION OF EXPLOSIVES (COUNT OF CONVICTION)

During the search of defendant's residence in January 2017, law enforcement found a bag, depicted below, containing commercial-grade fireworks, including titanium salutes designed to be shot out of a tube, and eleven homemade explosive sticks with attached fuses:



As a felon, defendant was not allowed to possess these explosives. Both the commercial fireworks and the homemade explosive devices are destructive devices that can cause loss of limb or even life if used improperly or if the devices malfunction.

## IV. ARGUMENT

Before imposing a sentence of imprisonment or a term of supervised release, the Court must calculate the applicable advisory Guidelines range and consider the factors set forth in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 46 (2007). If a term of supervised release is imposed, the Court must consider defendant's offense conduct and the factors set forth in 18 U.S.C. §§ 3583(c) and 3553(a)(1), (a)(2)(C), and (a)(2)(D) in fashioning specific supervised release conditions. *See United States v. Thompson*, 777 F.3d 368, 377 (7th Cir. 2015); *United States v.*

*Siegel*, 753 F.3d 705, 716-17 (7th Cir. 2014). In this case a sentence within the advisory Guidelines range is sufficient but not greater than necessary to satisfy the goals of Section 3553(a).

### A. The Advisory Sentencing Guidelines Range

The advisory Guidelines calculations are based on the November 2018 version of the Sentencing Guidelines Manual. As discussed below, the government and the PSR agree on the application of the Guidelines in this case.

### 1. Offense Level Calculations

### A. Count Two – Possession of Explosives

The base offense level is 16, pursuant to Guideline § 2K1.3(a)(4)(A), because defendant was a prohibited person at the time he possessed the explosive devices.

### B. Stipulated Offense One – False Statements in Connection With the Attempted Acquisition of a Firearm

The base offense level is 14, pursuant to Guideline § 2K2.1(a)(6)(A), because defendant was a prohibited person at the time he attempted to acquire a firearm.

### C. Grouping

Pursuant to Guidelines §§ 3D1.2 and 3D1.4, Count Two and Stipulated Offense One are not grouped together. Additionally, pursuant to Guidelines § 3D1.4(a), because the offense level for Count Two is two levels higher than the offense level for Stipulated Offense One, each group receives one unit, and the group with the higher offense level, Count Two, is increased by two offense levels.

Therefore, the adjusted offense level is 18.

### D.     Acceptance of Responsibility

The government agrees that defendant fully accepted responsibility by admitting guilt during the time of his arrest and by pleading guilty, and should receive a three-level reduction in offense level for acceptance of responsibility under Guideline § 3E1.1(a) and (b).

### 2.     Criminal History Category

The government and the Probation Office agree that defendant has four prior convictions that yield criminal history points: (1) a 2013 conviction for reckless conduct, which yields 1 criminal history point (PSR ¶ 61); (2) a 2013 conviction for burglary, where defendant was later sentenced to 5 years' imprisonment following a probation violation, which yields 3 criminal history points (PSR ¶ 63); (3) a 2014 conviction for impersonation of a peace officer, which yields 2 criminal history points (PSR ¶ 72); and (4) a 2014 conviction for bringing a weapon/tool into a penal institution, which yields 3 criminal history points (PSR ¶ 73). These four prior convictions yield a total of nine criminal history points. The Probation Office and the government further agree that defendant was on parole for several offenses at the time of his instant offense, including parole for his 2014 conviction for bringing a tool into a penal institution, yielding two additional criminal history points under Guideline § 4A1.1(d). PSR ¶ 75. The Probation Office calculated defendant's total criminal history points as 11, which is criminal history category V. PSR ¶ 76.

The government objects to the Probation Office's finding that defendant's prior conviction for being a minor in possession of alcohol yields zero criminal history points, citing Guideline § 4A1.2(c)(2). PSR ¶ 71. In 2013, defendant, who was

nineteen years old at the time of arrest, was found guilty of being a minor in possession of liquor in public in violation of 235 ILCS 5/6-16-A and sentenced to 2 days' incarceration.  PSR ¶ 71.  The relevant statute reads, in part, "Any person under the age of 21 years who has any alcoholic beverage in his or her possession on any street or highway or in any public place or in any place open to the public is guilty of a Class A misdemeanor."  235 ILCS 5/6-16-A.

Under Guideline § 4A1.2(c)(2), prior convictions for certain offenses, including "Juvenile status offenses and truancy" and "Public intoxication" are not given any criminal history points.  The Guideline further states that offenses "similar to" the listed offenses should not be given criminal history points.  U.S.S.G. § 4A1.2(c)(2).

As a threshold matter, defendant, not the government, carries the burden of proof to prove that a prior conviction should be excluded under § 4A1.2(c).  *United States v. Staples*, 202 F.3d 992, 996 (7th Cir. 2000) (concluding that a conviction for discharging an air rifle was countable as it was "more serious than disturbing the peace").  When determining whether a conviction is similar enough to the list in § 4A1.2(c) to merit exclusion from criminal history, the Seventh Circuit has articulated a number of factors to consider, including the actual offense conduct, the elements of the offense, and the sentence by the sentencing judge. *See Staples*, 202 F.3d at 995-97.  Similarly, Application Note 12(A) to § 4A1.2 says that courts should use a "common sense" approach to determining whether or not a violation is similar to those listed in (c)(1) and (c)(2), including "(i) a comparison of punishments imposed for the listed and unlisted offenses; (ii) the perceived seriousness of the offense as

indicated by the level of punishment; (iii) the elements of the offense; (iv) the level of culpability involved; and (v) the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct."

Under Illinois law, possession of liquor by a minor in public is a Class A misdemeanor, punishable by up to one years' imprisonment. 235 ILCS 5/6-16-A. This punishment is far more severe than other "juvenile offenses" in Illinois. For example, violation of the state-wide curfew by a minor is a petty offense, punishable by a fine of $10 to $500. 720 ILCS 5/12C-60(e). Purchase of tobacco by a minor is also a petty offense, punishable by a fine. 720 ILCS 675/1(a), 675/2(a). When defendant was convicted of public possession of alcohol by a minor, he was sentenced to two days' incarceration – exceeding any available punishment for a curfew violation or purchase of tobacco by a minor.

In *United States v. Hernandez-Lopez*, the Fifth Circuit analyzed Indiana's law barring consumption of alcohol by a minor and found that a conviction under that statue should be awarded criminal history points because the possible punishment for the crime was significantly higher than other state offenses involving minors, such as possession of tobacco by a minor. 704 Fed.Appx. 637 (5th Cir. 2017) (explaining that the statutory maximum punishment for consumption of alcohol by a minor was 60 days' incarceration, and the defendant had been sentenced to 60 days' incarceration). Following that logic, defendant's conviction is not sufficiently similar

to "Juvenile status offenses and truancy" and "Public intoxication"[3] offenses in the State of Illinois, and one criminal history point should be awarded for this conviction.

Under the government's calculation, defendant has 12 criminal history points and is criminal history category V. Whether or not the minor possession of alcohol conviction yields a criminal history point has no bearing on the overall criminal history category; either way it will be V.

### 3. Advisory Guidelines Range and Supervised Release Term

The government agrees with the following calculations of the Probation Office: defendant's total offense level is 15 and his criminal history category is V, resulting in an advisory Guidelines range of 37 to 46[4] months' imprisonment. PSR ¶ 172.

### C. A Sentence of 46 Months' Incarceration Is Appropriate Under Section 3553(a)

### 1. The Nature and Circumstances of the Offense

Defendant committed two serious offenses. First, he attempted to purchase a firearm even though he knew he was a felon prohibited from purchasing and possessing a firearm. To frustrate the legal mechanisms that would have prevented the sale, defendant pretended to be a licensed firearms dealer, producing a number of fake documents in support of his claim. Had the Kansas dealer not been as diligent, the sale may have occurred and defendant would have been shipped right to his home

---

[3] The undersigned was unable to locate a statute in Illinois criminalizing public intoxication for adults. Public intoxication is different from possession of alcohol by a minor – adults are legally allowed to possess and consume alcohol; minors are prohibited from doing so.

[4] The plea agreement contains the same offense level and criminal history category, but contains a typo as to the advisory Guidelines range for that offense level and criminal history category. Dkt. 54 at 11. The government agrees that the correct advisory Guidelines range is 37 to 46 months' incarceration.

a firearms receiver, which could easily have been paired with other parts to make a firearm. Defendant's attempted possession of a firearm is serious, as that firearm is capable of causing injury to others, and to escalating an argument or disagreement into a situation where a firearm might be discharged.

Additionally, defendant's possession of explosive devices is serious. Some of the explosive devices possessed by defendant were hand-made devices, which could be used to intentionally damage property or injure others. Even if the devices were used merely in an attempt to make a "harmless" loud noise, the homemade nature of the devices could lead to a malfunction which could injure the person lighting the device and any bystanders. Similarly, defendant possessed commercial-grade fireworks, intended to be used by licensed professionals in commercial firework displays. As set forth in more detail in the Government's Version on page 14, in 2017, the type of aerial shell fireworks possessed by defendant caused five deaths, including the death of an innocent bystander.[5] In the month around the 4th of July alone, there were over 1,000 injuries from reloadable shell fireworks and 200 injuries from homemade fireworks, with over 1,900 children being injured by fireworks.[6]

Defendant knows all too well the dangers of fireworks, as he bears permanent injuries to his hands that were caused by a fireworks accident when he was a young teenager. PSR ¶ 134.

---

[5] *See* Consumer Product Safety Commission "2017 Fireworks Annual Report: Fireworks-Related Deaths, Emergency Department-Treated Injuries, and Enforcement Activities During 2017" at 1, 9 available at: https://www.cpsc.gov/s3fs-public/Fireworks_Report_2017.pdf?Jr0lMG0Z5QYQMTyUtYr_3GR.991BKn4l.

[6] *See id*. at 13, 16-17.

### 2. Defendant's History and Characteristics

Despite defendant's young age – 23 years old at the time of his arrest in this case – he has a lengthy criminal history with multiple felony convictions. Additionally, his criminal history score also is not fully representative of his criminal history. Defendant has a number of convictions that did not yield points, either because he was a juvenile when he was arrested, or because multiple separate criminal acts were treated as one sentence for purposes of the Guidelines calculation because the arrest and the sentencings occurred on the same date.[7]

Defendant also has a history of violence: both threatening violence and committing acts of violence. In 2011, defendant was convicted of attempted intimidation of a victim who contacted law enforcement to report that defendant was trespassing; defendant later returned and yelled at the victim, saying "Don't go to court" and "We are going to kick your ass." PSR ¶ 58. In 2013, defendant was convicted of reckless conduct after he threw a bottle at a cab driver, screaming incoherently at the driver. PSR ¶ 61. A number of police reports related to defendants' arrests also document defendant making violent threats against others or throwing objects at others. PSR ¶¶ 79, 86, 90, 94, 103, 111. Additionally, two of defendant's prior arrests involve the defendant's possession and display of a replica

---

[7] Notably, defendant pleaded guilty to multiple counts of burglary, attempted burglary, and criminal trespass to vehicles on December 19, 2013, which are all treated as only one sentence pursuant to Guideline §4A1.2(a)(2). PSR ¶¶63-70. According to the associated police reports, defendant broke into, attempted to break into, and/or broke the windows of at least eight different vehicles. PSR ¶¶63-70.

firearm.[8] PSR ¶¶ 87, 113.

Defendant has a history of lying to law enforcement and to judicial officers when he perceives he may gain a benefit. During a 2012 arrest, he provided a false date of birth, falsely claiming he was a juvenile when in reality he was an adult. PSR ¶ 59. Defendant admitted he lied in hopes that he would be processed as a juvenile. *Id.* During the presentence investigation report, defendant admitted that he had previously lied to the personnel at the Cook County Department of Corrections about having mental health issues in an attempt to get what defendant described as "mental health probation." PSR ¶ 144. Defendant also admitted that when he was admitted to IDOC custody when he was 19, he falsely told IDOC that he drank three bottles of liquor per day in an attempt to get designated to a better correctional facility. PSR ¶ 149. As a result of the defendant's lies about alcohol abuse, he was placed into unneeded substance abuse services – wasting the resources of IDOC. PSR ¶ 150.

Defendant's lies continued in this case. During defendant's custodial interview in January 2017, when asked about the false FFL licenses, defendant falsely implicated a former classmate, E.P., as the individual who sent the fictitious licenses to the Kansas dealer. G.V. Ex. F at 5; PSR ¶ 26. In reality, E.P. was incarcerated during the time period when defendant was corresponding with the Kansas dealer, and was uninvolved in the fraudulent scheme. PSR ¶ 26. After his arrest in this

---

[8] Defendant also has a prior arrest where the reports state that he threatened an individual with an actual firearm; however, defendant was found not guilty of that charge. PSR ¶ 107.

13

case, defendant bizarrely claimed to Pretrial Services that he was also a Mexican citizen with family ties to Mexico. Dkt. 12 at 8.

Defendant also has a history of non-compliance with conditions of release. Defendant committed the instant offenses while on parole. Additionally, defendant has been found by courts to have violated his conditions of probation on at least three occasions. PSR ¶ 57, 63, 72. Defendant's probation was also terminated unsatisfactorily in one case. PSR ¶ 58.

Finally, defendant has a troubling history of impersonating law enforcement officers. In this case, he falsely told the Kansas dealer that he was a police officer, producing a false police identification card. In 2014, he was convicted of falsely impersonating a police officer after he flashed a fake badge at a CTA security guard, holding himself out to be a Cook County Sherriff. PSR ¶ 72. During the search of his residence in 2017, law enforcement indicia were found, including: an Illinois municipal license plate and police emergency lights for placement in a vehicle. G.V. Ex. E, PSR ¶ 52.

### 3. The Need To Provide Just Punishment, Afford Adequate Deterrence, Protect the Public, and Promote Respect for the Law

Defendant's prior interactions with the criminal justice system did not deter him in the instant case. Even though he was on parole and on electronic monitoring, he still possessed explosives and attempted to illegally acquire a firearm. Even after the ATF searched his house and specifically asked him about his attempts to purchase a firearm, defendant still purchased a firearms part from eBay. Specific deterrence is a serious concern for this defendant.

14

As for general deterrence, the illegal possession of firearms is a major problem in the Chicago area. Similarly, the illegal use of fireworks and explosive devices is commonplace, especially in the month of July. A significant term of incarceration will send the message that such actions have serious consequences.

### D. Recommended Conditions of Supervised Release

Given the circumstances of the offense, and defendant's history and characteristics, the government agrees with the Probation Office that defendant should be sentenced to the maximum term of three years' supervised release.

The applicable mandatory conditions of supervised release under 18 U.S.C. § 3583(d) are set forth on page 43 of the PSR. With one proposed modification detailed below, government has no objection to the recommended discretionary and special conditions of Supervised Release set forth on pages 44 through 48 the PSR, and concurs with the Probation Officer's rationale for these conditions.

Specifically, the government agrees that discretionary conditions (4), (6), (7), (8), and special conditions (1), (2), (3), and (11) promote the statutory factors of affording adequate deterrence to criminal conduct, protecting the public from further crimes by defendant, and assisting defendant in reintegrating into society upon his release. Providing defendant with adequate educational and treatment opportunities will help him achieve employment, which will be crucial in helping prevent recidivism.

The government further agrees that discretionary conditions (14), (15), (16), (17), (18), and (23) promote the statutory factor of allowing for effective monitoring of defendant during any supervised release term imposed.

The government proposes a modification to proposed special condition (14), which states that the defendant "shall not possess, carry or use real or counterfeited law enforcement paraphernalia or equipment, including but not limited to, law enforcement uniforms, badges and credentials, emergency vehicle lights or government license places." The government shares the concerns of the Probation Office that defendant may continue to impersonate police officers in the future. However, the condition as written may be overly broad, including police apparel and novelty items. The government proposes the following modification: "You shall not possess emergency vehicle lights or license plates that purport to be official government license plates. You shall not impersonate a police officer, including by the display of real or counterfeit police badges or police identification cards."

### E. Restitution, Fine, and Forfeiture

Restitution is not an issue in this case, and the PSR and government both agree that defendant has no assets that would allow him to pay a fine. PSR ¶ 168. The explosive devices at issue were the subject of ATF administrative forfeiture proceedings, and defendant waived his right to additional items taken from his residence, including a stolen Illinois municipal license plate and various replica firearm parts. Dkt. 54 at 13-14.

## VI.   CONCLUSION

For the reasons stated above, this Court should sentence Joshua Perva to 46 months' imprisonment, followed by a term of three years of supervised release.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:    /s/ *Michelle Petersen*
MICHELLE PETERSEN
Assistant U.S. Attorney
219 South Dearborn Street, Room 500
Chicago, Illinois 60604
(312) 886-7655

Dated: July 2, 2019